## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JORGE MIGUEL FUENTES FUENTES, <br><br> Plaintiff, <br><br> v. <br><br> MENNONITE GENERAL HOSPITAL INC.; DR. ELIZARDO MATOS CRUZ; SINDICATO DE ASEGURADORES PARA LA SUSCRIPCIÓN CONJUNTA DEL SEGURO DE RESPONSABILIDAD PROFESIONAL MÉDICO-HOSPITALARIA ("SIMED"), PUERTO RICO MEDICAL DEFENSE INSURANCE COMPANY ("PRMD"), ABC INSURANCE COMPANIES, JOHN DOE AND JAMES ROE | CIVIL NO.: 22-1471 <br><br><br> RE: TORT ACTION FOR MEDICAL MALPRACTICE PURSUANT TO ARTS. 1536 AND 1541, 31 P. R. Laws Ann. §§ 1080 AND 10806 <br><br><br> JURY TRIAL DEMANDED |

## <u>COMPLAINT</u>

**TO THE HONORABLE COURT**:

**APPEARS NOW**, **JORGE MIGUEL FUENTES FUENTES** (hereinafter referred to as "Plaintiff"), through the undersigned counsel, and hereby states, alleges, and requests as follows:

### JURISDICTIONAL BASIS

1. This case is based upon diversity jurisdiction under 28 U.S.C. §1332.

2. Plaintiff is domiciled in and is a resident of the state of California.

3. All Defendants are either individuals who reside in Puerto Rico or corporations organized under the laws of the Commonwealth of Puerto Rico with principal place of business in P.R. or of states other than California.

4. The matter in controversy exceeds the sum of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), exclusive of interest and costs, thus vesting jurisdiction on this Honorable Court pursuant to 28 U.S.C. § 1332.

5. Venue is proper in the District of Puerto Rico pursuant to 28 U.S.C. §1391, since the events and acts or omissions giving rise to this claim occurred in this district.

**THE PARTIES**

6. Plaintiff **JORGE FUENTES** (hereinafter "Plaintiff") is the grandson of patient Maria Mercedes Fuentes Miranda (hereinafter "Maria Mercedes", or "the patient"), who died at Hospital Menonita Cayey on February 5, 2022.

7. Co-Defendant MENNONITE GENERAL HOSPITAL, INC., d/b/a **HOSPITAL MENONITA CAYEY** (hereinafter "**MC**" or "hospital"), is a corporation duly incorporated and registered in and with its principal place of business in Puerto Rico.

8. Co-Defendant **MENNONITE GENERAL HOSPITAL, INC.** owns and/or operates **Menonita Cayey (MC)** a hospital located in Cayey, Puerto Rico, wherein it provides its patients with a gamut of hospital services and/or hospital care, including emergency, surgery, radiology, internal medicine, cardiology, PACU, ICU, laboratory and other hospital care and services.

9. Co-Defendant **DR. ELIZARDO MATOS CRUZ** (hereinafter "**DR. MATOS**") is a physician authorized to practice medicine in Puerto Rico, who is designated in the relevant medical record as the patient's attending physician and who treated Maria while admitted to Defendant **MC's** facility on the relevant dates.

10. Co-Defendant **SINDICATO DE ASEGURADORES PARA LA SUSCRIPCIÓN CONJUNTA DEL SEGURO DE RESPONSABILIDAD PROFESIONAL**

**MÉDICO-HOSPITALARIA** (hereinafter "**SIMED**") is an entity organized or operating under the laws of the Commonwealth of Puerto Rico, with its principal place of business in Puerto Rico, which issued insurance policies on behalf of one or more of the Co-Defendants, known and unknown Joint Tortfeasors in this case, for the acts and/or omissions described herein, encompassing the relevant period of time.

11. Co-Defendant **PUERTO RICO MEDICAL DEFENSE** (hereinafter, "**PRMD** ") is an insurance company organized, existing, and with its principal place of business in Puerto Rico which issued insurance policies for medical malpractice on behalf of one or more of the Co-Defendants, known and unknown Joint Tortfeasors in this case, for the acts and/or omissions described herein, encompassing the relevant period of time.

12. Co-Defendant **A, B, C INSURANCE COMPANIES** are entities or corporations organized or operating under the laws of the Commonwealth of Puerto Rico, with their principal place of business in Puerto Rico or in a state other than California, which issued insurance policies on behalf of one or more co-defendants for the acts or omissions described herein, encompassing the relevant period of time.

13. Co-Defendants unknown joint tortfeasors **JOHN DOE** and **JAMES ROE** are physicians or other health care providers fictitiously named herein, to be later replaced by their actual names which may become known through further discovery in this litigation and who may be liable to Plaintiff for the damages suffered, in whole or in part, for the actions and/or omissions herein described, encompassing the relevant period of time.

## GENERAL ALLEGATIONS

14.  Plaintiff Jorge Fuentes is the adult grandson of Maria Mercedes Miranda, who was a mother-like grandmother to him.

15.  Maria M. Miranda was born on October 5, 1941, and was 80 years old at the time of the events and death on February 5, 2022.

16.  Maria M. Miranda had a history of bilateral carotid stenosis, asymptomatic.

17.  Prior to the events in this complaint, Maria M. Miranda was neurologically intact and functional on a daily basis.

18.  Maria M. Miranda was taking both Aspirin and Plavix for dual antiplatelet therapy prior to her operative intervention by Dr. Matos.

19.  Early on January 25, 2022, Mrs. Miranda was taken by Dr. Matos to surgery for a right carotid endarterectomy using a Dacron patch angioplasty.

20.  According to Dr. Matos Cruz' operative note of that day, there were no intraoperative or immediate postoperative complications, and the patient was deemed neurologically intact.

21.  At 3:40 pm, nurse Axel Lopez Torres notes a hematoma in the incision area but does not notify physician.

22.  Maria was taken from recovery to a post-surgery monitoring area and Dr. Matos informed Plaintiff's mother Evelyn Fuentes that the surgery was a success, and that María would be released in two days.

23. At that time, Plaintiff's mother Evelyn Fuentes spoke to her mother and Plaintiff's grandmother Maria who was not intubated and was able to carry on a normal conversation.

24. At 7 pm the nurse notes edema in the circumference of the neck but does not notify physician.

25. At 5:00 pm nurse Lopez Torres notes patient reports pain as 9 of a top scale of 10 and administers pain medication.

26. At 9:50 pm., nurse records Maria M. Miranda's inability to defecate despite having the need to do so.

27. The following day, at 5:35 am, over seven and a half hours later, Maria M. Miranda is recorded by nurses as being agitated, yelling, and crying in pain that she needs to defecate.

28. Dr. Medina is called and prescribes Bisacodyl Supp STAT, but medication is not available in Onnicell machine and is told by supervisor to follow up with pharmacy.

29. An hour later, Maria M. Miranda continues agitated and yelling she needs to defecate, while nurses try to calm her telling her she needs to keep her blood pressure down.

30. Nurses note at 6:56 am indicate that the unavailable medication will be provided at some indeterminate time after 7 am.

31. The medical record is devoid of any indication that the Bisacodyl Supp medication was ever administered to the suffering patient.

32. On January 26, 2022, there was no post operative note in the record.

33. On that same day Maria complained about the incision being painful to her daughter and Plaintiff's mother Evelyn Fuentes.

34. On January 27, 2022, Maria M. Miranda also complains of neck pain on the side of the carotid surgery.

35. According to the medical record, on January 27, 2022, at 2:30 pm, nursing note first records the neck pain complaint and describes area with edema and hard to the touch.

36. According to the 2:30 pm nurse's note, Dr. Medina is notified, and she calls Dr. Matos, who activates the surgery team for emergency intervention.

37. According to the medical record, Maria M. Miranda arrives at the operating room at 5:48 pm.

38. On January 27, 2022, Dr. Matos performed an emergency exploratory neck surgery due to an expanding right neck hematoma with tracheal deviation after right carotid endarterectomy.

39. Dr. Matos in his operative report finds "evidence of bleeding of two separate points of endarterectomy suture line, organized hematoma, new fresh bleeding, in the presence of tracheal deviation."

40. Dr. Matos addresses the situation in the operating room and closes the wound.

41. Maria was returned to the ICU.

42. On January 28, 2022, Maria's family was informed that Maria had suffered a stroke while at MC, but no further details were provided.

43. Maria M. Miranda remained intubated until January 29, 2022, when extubation was attempted and she was not neurologically intact.

44. Maria Mercedes was re-intubated on January 30, 2022.

45. On January 31, 2022, a head CT performed on Maria Mercedes revealed a massive right occipital lobe ischemic infarct.

46. Dr. Rafael Lopez, neurologist, at 5:07 pm, evaluates Maria M. Miranda, the reason for the consult being that she had asymmetrical limb movements, indicative of a Cerebral Vascular Accident (CVA).

47. On February 4th, 2022, Plaintiff Jorge Fuentes arrived in Puerto Rico and went directly to see his grandmother at MC that afternoon.

48. Maria recognized her grandson Jorge, but soon after became incoherent.

49. After the massive brain infarct, there was little neurological recovery with worsening respiratory insufficiency and Maria Mercedes Miranda died on February 5, 2022.

**FIRST CAUSE OF ACTION FOR NEGLIGENCE UNDER
ARTICLE 1536 & 1541 OF THE PUERTO RICO CIVIL CODE
AGAINST MENONITA CAYEY (MC) AND ITS PERSONNEL**

50. The allegations contained above are incorporated by reference as if again fully set forth herein.

51. At the relevant times of this complaint, **Menonita Cayey (MC)** operated or contracted to operate nursing, emergency, hospital, telemetry, radiology, cardiology, intensive care, and surgery departments within its premises.

52. The hospital sets up policies, procedures and/or requirements for the treatment of the nursing, emergency, hospital, telemetry, intensive care, radiology, cardiology and surgery departments within its premises.

53. **MC** through its policies, procedures and/or requirements provided privileges to Dr. Matos to operate patients in its facilities and provide follow up care.

54.  **MC** is liable for the negligent acts or omissions of **Dr. Matos** that caused damage to Plaintiff for failure to provide, disclose, or enforce proper protocols to ensure proper care, discontinuance of medicine to attain hemodynamic stability, monitoring and immediate intervention by doctors of patients, such as Maria Mercedes.

55.  **MC** is liable for failing to adequately supervise or monitor **Dr. Matos** in order to prevent negligence in the treatment provided by him to Maria Mercedes prior, during and after the carotid endarterectomy.

56.  **MC** supplies medical, nursing, clerical, administrative, and technical personnel to the emergency, hospital, telemetry, intensive care, radiology, cardiology and surgery departments within its premises.

57.  **MC** derives revenue from the services provided to patients at these departments within its premises.

58.  **MC** is liable for medical malpractice occurring at the previously mentioned hospital departments located on its premises.

59.  The treatment offered by **MC** to patient Maria Mercedes, through its medical, nursing, technical personnel, and/or the doctors who either are employees, or have privileges who used its facilities, was below the medical standard that satisfies the exigencies generally recognized by the medical profession in light of the modern means of communication and teaching and, as such, directly caused and/or contributed to causing Plaintiff the untimely death of his beloved grandmother, patient Maria Mercedes, and the injuries, as described herein.

60.  **MC's** personnel failed to exercise the care and precautions required under the circumstances in order to prevent the loss of patient Maria Mercedes's life, lacked the

knowledge and medical skill required to treat a patient in their care, and failed to timely have available the personnel and equipment necessary to avoid the injuries, suffering and subsequent death of patient Maria Mercedes.

61. **MC** medical and hospital personnel negligently failed to provide patient Maria Mercedes with competent nursing and medical personnel to monitor, treat and follow up in a timely and adequate manner.

62. **MC** medical personnel, including defendants named herein, negligently failed to adequately follow an appropriate course of treatment such as immediate surgical intervention upon the first sign of hematoma of the right side of the neck.

63. **MC** medical personnel, including defendants named herein, negligently allowed the patient to be subjected to an operation while on aspirin and Plavix, exposing her to bleeding.

64. **MC** nursing and medical personnel negligently failed to recognize or otherwise ignored the signs and symptoms that patient Maria Mercedes developed post-surgery bleeding.

65. **MC** nursing negligently failed to report the formation of a hematoma on Maria Mercedes right side of the neck in the area of the incision.

66. **MC** nursing negligently failed to report the patient's complaints of pain in the area of the hematoma and incision.

67. **MC** nursing negligently failed to report the formation of edema in the circumference of Maria Mercedes neck.

68. **MC** nursing and medical personnel negligently failed to adequately examine and follow up on patient and failed to notice or recognize significant post operative bleeding until the afternoon of the second post operative day.

69. **MC** nursing personnel failed to timely notify the presence of the hematoma to the physicians in charge of the patient for prompt action.

70. **MC** nursing and medical personnel failed to timely return Maria Mercedes to the operating room for an earlier neck exploration.

71. Patient Maria Mercedes required closer nursing and medical supervision but instead was afforded delayed and inadequate treatment at **MC.**

72. Patient Maria Mercedes was neglected and mistreated by **MC's** nursing personnel, causing further pain and suffering to plaintiff.

73. **MC**'s nursing staff was not familiar with common and possible complications of a carotid endarterectomy in a patient such as Maria Mercedes and as such failed to gather all relevant data and report it to the physicians on time.

74. **MC**'s nursing staff negligently failed to perform a neurological assessment upon unit arrival and at scheduled time intervals throughout her stay.

75. **MC**'s nursing staff negligently failed to perform a cranial assessment upon unit arrival and at scheduled time intervals throughout her stay.

76. **MC**'s nursing staff negligently failed to perform an assessment of the neck incision site upon unit arrival and at scheduled time intervals throughout her stay.

77. **MC**'s nursing staff negligently failed to contact the physician to inform that the medication to help her terribly painful constipation was not available nor administered to the patient.

78. **MC**'s nursing staff failed to establish an affirmative care plan that directly correlated with patient's significant conditions.

79.  **MC**'s nursing staff failed to provide close and effective patient monitoring to diminish the damages to the patient.

80.  **MC**'s nursing staff notes were repetitive and lacked meaningful information.

81.  **MC**'s nursing staff notes fail to show signs of objective clinical judgment with regards to significant changes in patient.

82.  **MC's** nursing staff's interventions failed to address a physical examination of patient.

83.  **MC's** nursing care fell below the standards of reasonable and prudent nursing care and practice; particularly, the across-the-board nursing failure of basic monitoring, assessment, and interventions with the patient.

84.  **MC**'s nursing care failed to follow nursing protocols initiating appropriate and timely treatment and referring patients for direct evaluation by physicians.

85.  **MC** failed to implement, provide, disclosure and or enforce proper nursing protocols to ensure proper care and monitoring of patients that undergo surgical procedures such as a cardiac endarterectomy while on antiplatelet therapy.

86.  **MC** failed to ensure that informed consent documents, included the risks of profuse bleeding among other consequences, while on dual antiplatelet medication, and failed to display the grade of reasonableness that a prudent and reasonable person would exhibit, thus breaching its continuous obligation to be vigilant for the health of the patient while at their facilities.

87.  At all times herein pertinent, co-Defendant **MC**, its directors, officers, and employees and physicians with privileges were negligent in failing to provide the proper medical attention to patient Maria Mercedes, in failing to provide competent medical doctors, the proper supervision of co-Defendant **Dr. Matos** and other unknown physicians and

residents employed by and/or practicing at **MC,** and by otherwise failing to exercise due care and caution to prevent the tortious conduct, injuries, and suffering to Plaintiff and to patient Maria Mercedes.

88.  **MC** not only failed to adequately select, monitor, intercede or supervise the Defendant physicians and/or ensure their prompt attention to the patient, but also permitted the use of its facilities by physicians with privileges, in that way allowing, encouraging, and condoning the negligent care and improper treatment of patient Maria Mercedes, proximately and directly causing her death as well as Plaintiff's injuries.

89.  **MC** failed in its corporate duty to look out for the health of Maria Mercedes and guarantee her safety and well-being while hospitalized, including but not limited to carefully select the physicians that are granted privileges to practice at its institution, requiring that such physicians take courses and are current, monitoring the work of such physicians and intervening when they commit acts of malpractice, discontinuing their privileges for repeated or crass negligence and ensuring they are up to date with technological advances.

90.  As such **MC** is vicariously and directly liable for the medical and nursing malpractice that occured to Maria Mercedes while at its hospital facilities.

91.  As a direct and proximate result of **MC's** lack of supervision and failure to staff its emergency ward, hospital ward, telemetry unit, ICU unit, cardiology department and surgery departments with the medical personnel and other personnel in charge of coordinating and communicating vital information necessary to appropriately treat situations such as Maria's at **MC**, **MC** and its personnel negligently caused Plaintiff the

untimely death of his grandmother Maria Mercedes and his injuries, as described herein.

92.     As a direct and proximate cause of co-Defendant **MC** and its personnel's failure to properly treat patient Maria Mercedes, Plaintiff sustained severe pain and suffering and other damages, as described below.

**SECOND CAUSE OF ACTION FOR NEGLIGENCE UNDER ARTICLE 1536 & 1541 OF THE PUERTO RICO CIVIL CODE AGAINST PHYSICIAN DR. ELIZARDO MATOS CRUZ**

93.     The allegations contained above are incorporated by reference as if again fully set forth herein.

94.     The interventions of Co-Defendant **Dr. Elizardo Matos Cruz (hereinafter "Dr. Matos")**, with patient Maria Mercedes while she was at **MC**, were below the standards that satisfy the exigencies generally recognized by the medical profession in light of the modern means of communication and teaching and, as such, directly caused and/or contributed to causing the damages and premature death of patient Maria Mercedes and, thus, her pain and suffering as well as that of Plaintiff, as described herein.

95.     Co-Defendant **Dr. Matos** caring for this patient, failed to exercise reasonable care and skill commensurate with the standard of care practiced in the medical profession at that time and under like and similar circumstances when he failed to ensure bleeding would have been minimized at a hematology consult prior to the surgery.

96.     Co-Defendant **Dr. Matos** failed to exercise reasonable care and skill commensurate with the standard of care practiced in the medical profession at that time and under like and similar circumstances when he failed modify the dual antiplatelet therapy, a

combination of Aspirin and Plavix that she was taking, to a low dose Aspirin 81 mg and withholding the Plavix for seven days prior to her surgical procedure to avoid bleeding in this patient with prior known purpura and bruising.

97. Co-Defendant **Dr. Matos** failed to exercise reasonable care and skill commensurate with the standard of care practiced in the medical profession at that time and under like and similar circumstances when he failed to be diligent, exacting and timely in Maria Mercedes postoperative care especially with her propensity for bleeding.

98. Co-defendant **Dr. Matos** subjected the patient to a surgery but failed to adequately monitor her and return her in a timely fashion for re-exploration for control of post operative hemorrhage.

99. Co-Defendant **Dr. Matos**' failure to promptly return Maria Mercedes resulted in her suffering in a massive neck bleed with compression of the carotid artery resulting in postoperative ischemic stroke CVA and eventual demise.

100. As a direct and proximate cause of Co-Defendant **Dr. Matos's** actions and omissions Maria Mercedes was deprived of an opportunity to be adequately and promptly treated when time was of the essence and the Plaintiff, through the premature death of his grandmother was deprived of her happiness, love and support.

101. In so doing, Co-Defendant **Dr. Matos** committed professional negligence, including lack of expertise, fault and malpractice, which directly and proximately caused the suffering and death of patient Maria Mercedes and the damages to Plaintiff, as detailed herein.

## THIRD CAUSE OF ACTION AGAINST SIMED

102.  The allegations contained above are incorporated by reference as if again fully set forth herein.

103.  Co-Defendant **SIMED** was at all times herein pertinent an insurance company authorized to do business in the Commonwealth of Puerto Rico and which issued a public liability and/or malpractice insurance policy and/or other applicable insurance on behalf of one or more Defendants and/or other unknown joint tortfeasors.

104.  Pursuant to 26 P.R. Laws Ann. § 2001, an insurance company is liable for the negligence or fault of its insured.

105.  Pursuant to 26 P.R. Laws Ann. § 2003, an action against an insurer may be brought separately or may be joined together with an action against its insured.

## FOURTH CAUSE OF ACTION AGAINST PRMD

106.  The allegations contained above are incorporated herein by reference as if again fully set forth.

107.  Defendant **PRMD** was, at all times herein pertinent, an insurance company authorized to do business as such in the Commonwealth of Puerto Rico which issued a public liability and/or malpractice insurance policy and/or other applicable insurance on behalf of one or more Defendants and/or other unknown joint tortfeasors.

108.  Pursuant to 26 P.R. Laws Ann. § 2001, an insurance company is liable for the negligence or fault of its insured.

109.  Pursuant to 26 P.R. Laws Ann. § 2003, an action against an insurer may be brought separately or may be joined together with an action against its insured.

15

**FIFTH CAUSE OF ACTION AGAINST ABC INSURANCE COMPANIES**

110.    The allegations contained above are incorporated herein by reference as if again fully set forth.

111.    Co-Defendants **ABC INSURANCE COMPANIES** are fictitiously named insurance companies so designated for lack of knowledge at this point in the proceedings.

112.    Co-Defendants **ABC INSURANCE COMPANIES** were, at all times herein pertinent, insurance companies authorized to do business as such in the Commonwealth of Puerto Rico which issued a public liability and/or malpractice insurance policy and/or other applicable insurance on behalf of Defendants and/or other unknown joint tortfeasors.

113.    Pursuant to 26 P.R. Laws Ann. § 2001, an insurance company is liable for the negligence or fault of its insured.

114.    Pursuant to 26 P.R. Laws Ann. § 2003, an action against an insurer may be brought separately or may be joined together with an action against its insured.

**SIXTH CAUSE OF ACTION FOR NEGLIGENCE UNDER ARTICLES
1536 & 1541 OF THE PUERTO RICO CIVIL CODE
AGAINST JOHN DOE AND JAMES ROE UNKNOWN JOINT TORTFEASORS**

115.    The allegations contained above are incorporated by reference as if again fully set forth herein.

116.    Co-Defendants John Doe and James Roe are so designated for lack of knowledge at this point in the proceedings.

117.    Co-Defendants John Doe and James Roe's intervention in the nursing, technical or medical care of Mrs. Miranda while at Co-Defendant **MC** was below the nursing, technical

16

and medical standard that satisfies the exigencies generally recognized by the medical profession in light of the modern means of communication and teaching and, as such, directly caused and/or contributed to causing Mrs. Miranda's death and, thus, the pain and suffering of Plaintiff upon her premature death, as described herein.

118.    Co-Defendants John Doe and James Roe negligently and carelessly, breaching the medical standard that satisfies the exigencies generally recognized by the medical profession in light of the modern means of communication and teaching, failed to perform a complete, thorough medical examination of Mrs. Miranda, commensurate with her condition as such, directly caused and/or contributed to causing her premature death and the emotional pain and suffering such death caused upon the Plaintiff.

119.    Co-Defendants John Doe and James Roe negligently and carelessly failed to exercise reasonable care and skill commensurate with the standard of care practiced in the medical profession at that time and under like and similar circumstances when they failed to correctly and promptly recognize and treat the patient's symptoms and condition and, thus, failed to provide a prompt, complete, thorough and adequate evaluation and treatment.

120.    Co-Defendants John Doe and James Roe negligently and carelessly failed to promptly examine, evaluate and treat Mrs. Miranda's symptoms, thus denying her the provision of essential and life-saving treatment.

121.    Co-Defendants John Doe and James Roe failed to exercise reasonable care and skill commensurate with the standard of care practiced in the medical profession at that time and under like and similar circumstances when they failed to provide Mrs. Miranda with appropriate treatment.

122.    As a direct and proximate cause of Co-Defendants John Doe and James Roe's negligent actions and omissions upon being presented with a patient in Mrs. Miranda's condition and with her clinical signs, Mrs. Miranda was deprived of the opportunity to be promptly treated when time was of the essence and the Plaintiff, through the premature death of Mrs. Miranda was deprived of her companionship, camaraderie, support and love.

123.    In so doing, Co-Defendants John Doe and James Roe committed professional negligence, including lack of expertise, fault and malpractice, which directly and proximately caused the death of Mrs. Miranda, as detailed herein.

124.    As a direct and proximate cause of Co-Defendants John Doe and James Roe's negligence in failing to properly treat Mrs. Miranda, Plaintiff sustained severe pain and suffering upon the loss of his beloved grandmother.


**DAMAGES**

125.    The allegations contained above are incorporated herein by reference as if again fully set forth.

126.    Defendants' actions or omissions resulted in patient's suffering while hospitalized, which were witnessed in part by Plaintiff, who came to Puerto Rico and immediately went to **MC** to see his beloved grandmother Maria Mercedes.

127.    Patient Maria Mercedes was like a mother to Plaintiff**,** whom he loved dearly.

128.    Plaintiff had grown up with Mrs. Miranda, staying at her house and spending time with her everyday after school, going to church together and more.

129.    Plaintiff, year after year since the time he could remember, was cared for by his grandmother Maria Mercedes thereby developing an extremely close relationship with her.

130.    It was not until Plaintiff joined the Navy and left Puerto Rico that the almost daily contact ceased.

131.    When Mrs. Miranda was hospitalized, plaintiff came to Puerto Rico once he had a chance to do so.

132.    Plaintiff's mother Evelyn Fuentes accompanied Plaintiff's grandmother Maria while at MC and witnessed the substandard hospital and medical care and informed Plaintiff of the same.

133.    Plaintiff suffered intense pain and anxiety when medical and nursing staff at **MC** failed to address the deterioration of his grandmother and failed to adequately intervene in her care.

134.    Plaintiff suffered intense pain and anxiety when some of the nursing staff at **MC** failed to care for Mrs. Miranda, instead inflicting unnecessary pain upon the patient.

135.    Plaintiff suffered intense pain and anxiety when he learned of the extreme pain and suffering and utter deterioration of his grandmother due to neglect of defendants.

136.    As a result of the professional negligence, lack of expertise, fault, and malpractice of all Co-Defendants, Plaintiff unnecessarily and prematurely lost his grandmother.

137.    Plaintiff has suffered dearly the unnecessary loss of his grandmother, with whom he will not be able to share any more special moments of his life.

138.    Plaintiff's quality of life has been severely and permanently eviscerated as a result of his grandmother's death.

139.    Plaintiff was very close to his grandmother and has lost her company, counsel and love for the rest of her life.

140.    As a direct and proximate result of the negligence of all Defendants, Plaintiff will continue to suffer the irreparable loss of his grandmother and his quality of life will continue to be severely affected for the rest of his life.

141.    As a direct and proximate result of the negligence of all Defendants, Plaintiff has suffered and will continue to suffer an intense sense of frustration and guilt not having been able to ensure that his mother–like grandmother obtained proper medical care.

142.    As a direct and proximate result of the negligence of all Defendants, Plaintiff has a sense of frustration, guilt and a deep pain that affects him daily, knowing that Maria Mercedes's death was preventable.

143.    The acts and omissions of the Defendants have caused Plaintiff a terrible loss, intense, emotional pain and suffering, frustration, and a grave sense of injustice equal to a sum not less than **ONE MILLION DOLLARS ($1,000,000)**.

### a.   TRIAL BY JURY DEMANDED

144.    Plaintiff demands trial by jury on all causes of action herein raised.

### PRAYER FOR RELIEF

145.    **WHEREFORE**, Plaintiff demands judgment against all Defendants jointly and severally, in an amount not less than **ONE MILLION DOLLARS ($1,000,000)**, as well as costs incurred, reasonable attorneys' fees, and such other and further relief as this Honorable Court may deem just and proper under the law.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 28th day of September 2022.

**CERTIFICATE OF SERVICE**: I certify that on this same that I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will automatically send notice of such filing to all attorneys of record.

**INDIANO & WILLIAMS, P.S.C.**
Attorneys for Plaintiff
207 del Parque Street, Third Floor
San Juan, Puerto Rico 00912
Tel: (787) 641-4545; Fax: (787) 641-4544
jeffrey.williams@indianowilliams.com
vanesa.vicens@indianowilliams.com

By: *s/ Jeffrey M.  Williams*
JEFFREY M. WILLIAMS
USDC PR Bar No. 202104

By: *s/Vanesa Vicéns-Sánchez*
VANESA VICENS-SANCHEZ
USDC PR 217807